### Emily J. Parrish et al., Appellees, v. Black Diamond Coal Company, Appellant.

MINES AND MINERS ACT—*when instruction erroneously authorizes recovery.* In an action under the Mines and Miners Act, an instruction is erroneous which authorizes a recovery if the jury find from a preponderance of the evidence that the defendant has "wilfully failed and neglected to comply with the provisions of the statute *as alleged in the declaration,*" one count of the declaration charging that the mine manager "in particular did not properly mark and display a danger signal at said bank of coal," the statute upon which such declaration was predicated being that said mine manager shall "see that all dangerous places above and below are properly marked and that danger signals are displayed wherever they are required."

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A.

CREIGHTON, Judge, presiding. Heard in this court at the November term, 1907. Reversed and remanded. Opinion filed April 21, 1908.

HAMILTON, CATRON & SAMPSON, for appellant.

ROBERT H. PATTON, for appellees.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case by the administratrix of the estate of John Parrish, deceased, against the Black Diamond Coal Company, a corporation, and the owner and operator of a coal mine near Auburn, Illinois, for the recovery of damages accruing to the widow and children of her intestate, whose death is alleged to have been caused by the wilful violation by appellee of the statute relative to Mines and Miners. The plaintiff recovered judgment for $2,000 from which the defendant appeals.

The first count is based upon section 18 of said act, which prescribes the duties of mine examiners and alleges in substance that the deceased was working as a helper on a machine used in cutting coal in a certain pillar which had been theretofore fired and loosened, so that when the machine cut into the same, it fell upon and killed deceased; that the defendant's mine examiner did not visit and inspect said mine, and did not inscribe on the walls of the working places with chalk the day and month of his visit, and place a conspicuous mark as notice to all men to keep out of dangerous places and did not report to the mine manager when dangerous conditions were discovered, and did not prevent any one from entering or remaining and working in said mine until all conditions were made safe, and did not make a daily record of the conditions of said mine in a book kept for that purpose, preserved in the office of the defendant, and did not make such record before deceased was permitted to enter said mine; that on account of such wilful violation of the statute, the deceased went to work in said mine

where said coal was loose and apt to fall, all of which could have been determined by the defendant had its mine examiner made a proper inspection; by means of which wilful failure to comply with the statute, the "plaintiff" was greatly injured by coal falling upon him and soon died.

The second count is intended to be based upon section 18 of the statute prescribing the duties of mine managers and alleges that the defendant was engaged in mining coal in said mine by machines and by blasts of powder placed in the banks of coal, that deceased was assisting in the operation of a machine against a bank of coal in a certain pillar; that appellant's mine manager did not visit all the various working places in said mine as often as practicable, and did not see that all dangerous places above and below were properly marked and danger signals displayed, and in particular did not properly mark and display a danger signal at said bank of coal which had been rendered dangerous to machine men there operating, because a certain shot had been fired therein; that because of such wilful failure deceased was at work at said bank of coal, and on account of its condition said bank of coal fell upon him and caused his death. The defendant pleaded the general issue to both counts.

The evidence discloses the following facts: On and prior to November 1, 1906, appellee's intestate, an employe of appellant, was engaged in assisting in the operation of an electric coal-cutting machine in use in a certain room of appellant's mine. On that day the room in question had been opened toward the north to its full length of about 200 feet. For the purpose of opening an air course through the north wall of the room into an adjoining room, the machine operator then began cutting with the machine under the face of the coal at a place theretofore designated and marked by the mine manager. When the machine had made one full length cut it was removed one width to the east, and a second cut begun. The deceased then

started to shovel away the debris caused by the first cut, and while he was kneeling down, for that purpose, the coal in the wall above the machine suddenly split away and fell upon him, whereby he received injuries which caused his death shortly thereafter. Some three weeks before, one Proctor, who was then engaged in mining coal in the room, had bored two holes each of a depth of two feet into the east wall and about two feet south of the north wall, one about a foot below the roof and the other three or four feet below the first. After the accident, a crack was discovered in the coal back of the surface of the wall extending from one hole to the other, and in line with the rear end of the holes, in consequence of which when the machine cut out the supporting coal at the bottom, the coal above had become detached and fallen. It is not controverted that such condition was created by the improper boring of the holes—in the north wall and the subsequent firing of the charges of powder placed therein. The main controversy upon the trial was as to whether the existence of the holes and the dangerous conditions arising therefrom, were so apparent as to have been discoverable upon a proper inspection by the mine examiner. The mine examiner, Potter, testified that he had made daily examination of the room prior to and including the morning of the accident, but at no time saw or knew of the existence of the holes in question; that there was at no time any indication of a dangerous condition; that he made no marks in the room other than those indicating the dates of his visit; that upon completing his examination on the morning of the accident he made a correct report of the condition of the mine as he found it at that time, showing the same to be in good condition. Both the mine manager and the superintendent testified that they had inspected the room on the day before the accident and frequently prior thereto, and found nothing to indicate any dangerous conditions therein. The evidence adduced by appellee tended to show that the mine examiner had

failed properly to examine the room, and that if he had done so, the dangerous condition of the room would have been apparent. The trial court therefore properly refused to direct a verdict for appellant. As the judgment must be reversed for the reason hereafter indicated, it will be unnecessary further to discuss the evidence.

The first instruction given at the request of appellee, after reciting the statute relative to mines and miners, told the jury that if they believed from a preponderance of the evidence that the defendant had "wilfully failed and neglected to comply with the provisions of the statute *as alleged in the declaration*" and that as the direct result thereof, the deceased received injuries which resulted in his death they should find the defendant guilty. It will be observed that the second count of the declaration after alleging the failure of the mine manager to comply with the statute in certain other particulars, alleges that he "in particular did not properly mark and display a danger signal at said bank of coal," and that because of such wilful failure the bank of coal fell and caused the death of the deceased. Paragraph "D" of section 16 of the Mining Act provides that the mine manager shall "see that all dangerous places above and below are properly marked and that danger signals are displayed wherever they are required." The instruction thus authorized a verdict for the plaintiff, in the event that the jury found that the dangerous condition was known to the mine manager and that he did not personally "properly mark and display a danger signal at the bank of coal" where such condition existed; thereby permitting a recovery for the violation of an alleged duty not imposed by the statute.

It being impossible to determine under which count of the declaration the verdict of the jury was returned, the judgment of the Circuit Court must be reversed and the cause remanded.

*Reversed and remanded.*